THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v DAVID MUNOZ, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ELMER SANCHEZ-MEDINA, Appellant.

First Department, February 6, 1990

## APPEARANCES OF COUNSEL

*Steven D. Ateshoglou* for David Munoz, appellant.

*Andrea Hirsch* of counsel *(Philip L. Weinstein,* attorney), for Elmer Sanchez-Medina, appellant.

*Deirdre Roney* of counsel *(Mark Dwyer* with her on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

CARRO, J.

On this appeal, we are presented with a troubling question: whether a reversal is mandated where the Assistant District Attorney who presented the case to the Grand Jury was not admitted to the practice of law, resulting in the presence of an unauthorized person during the Grand Jury proceedings, thereby rendering the indictment defective. The related question of whether defendants' due process rights were violated where the prosecuting attorney at trial was not admitted to practice is also presented.

The People and defendants have stipulated that the Assistant District Attorney, one Daniel J. Penofsky, was never admitted to the Bar during the 16 years he prosecuted cases. While Penofsky is a law school graduate, he either never sat for or never passed the New York State Bar examination. Neither did Penofsky ever submit documentation to the Character Committee of this, or any other, judicial department, in an effort to be admitted upon waiver of the Bar examination due to reciprocity with another State.

Regardless of the fact that he was not an admitted attorney, Penofsky practiced law for 16 years; for three years he was an Assistant District Attorney in Kings County, followed by some 12 to 13 years as an Assistant District Attorney under the Special Narcotics Prosecutor, Sterling Johnson. During Penofsky's tenure with that office, he represented the People before the Special Narcotics Grand Jury which returned the indictment against the appellants herein, and subsequently tried the case. In March 1989, Penofsky was fired, after an unrelated investigation confirmed allegations that he was not an admitted attorney.

Defendants argue that because Penofsky was not admitted to the Bar when he presented the case to the Grand Jury, his presence constituted that of an unauthorized person during the Grand Jury proceedings, thereby impairing its integrity and possibly resulting in prejudice to defendants; they further argue that the indictment voted and filed after Penofsky's presentation is, as a matter of law, defective.

There is no question that "presentation to a Grand Jury by one who has no jurisdiction over the subject matter so impairs the integrity of the Grand Jury as to require dismissal of the indictment". *(People v Dunbar,* 53 NY2d 868, 871 [1981], citing *People v Di Falco,* 44 NY2d 482 [1978].) Thus, a special prosecutor, whose grant of authority was expressly limited to cases dealing with corruption in the criminal justice process is not authorized to appear before the Grand Jury *(People v Di Falco, supra,* 44 NY2d, at 485, 488), nor is a regional attorney for the Department of Environmental Conservation *(People v Beauvais,* 98 AD2d 897, 898 [3d Dept 1983]).

Here, however, Penofsky was appointed and employed by the office of the District Attorney, which does have jurisdiction to appear before the Grand Jury (CPL 190.25 [3] [a]; *People v Di Falco, supra,* 44 NY2d, at 486-487). This authority is extended to Assistant District Attorneys as appointees of

the District Attorney. *(See, People v Dunbar, supra,* 53 NY2d, at 871; CPL 1.20 [32]; *see also, People v Garret,* Sup Ct, NY County, Aug. 14, 1989, Bell, J., index No. 3689/89 [Assistant District Attorney, a lawyer who was awaiting admission, was determined not to be an unauthorized person at the time she presented case to Grand Jury]; *cf., People v Beauvais, supra,* 98 AD2d, at 898.) We further note that no statute expressly forbids the presence of an unadmitted Assistant District Attorney in the Grand Jury. *(Compare,* Judiciary Law § 478 [2], [3] [authorizing the practice of law for certain law school graduates who are not admitted to the Bar].)

█ While we do not condone the practice of allowing unadmitted lawyers to present cases to the Grand Jury, we do not believe that Penofsky's presentation herein *per se* impaired the integrity of the proceedings, causing a risk of prejudice to defendants. (CPL 210.35 [5].) Defendants raise no claim of error or prejudice with regard to the Grand Jury proceedings aside from that regarding Penofsky's status as an unadmitted lawyer. *(See also, People v Wilson,* 77 AD2d 713 [3d Dept 1980]; *People v 80 Main St. Theatre Corp.,* 88 Misc 2d 471, 472 [Nassau County Ct 1976]; *see generally, Bank of Nova Scotia v United States,* 487 US 250.)

While we decline to hold that the Grand Jury proceedings herein were defective, were we to have held otherwise, the remedy for presentation by an unauthorized prosecutor would have been re-presentation by the District Attorney's office, specifically by a duly admitted Assistant District Attorney. *(People v Di Falco, supra,* 44 NY2d, at 488.)

█ Neither are we convinced that the convictions herein should be reversed and a new trial ordered because defendants were tried by a lawyer who was not admitted to the Bar. There is currently no rule in New York to the effect that prosecution by an unadmitted lawyer entitles a defendant to an automatic reversal. *(Cf., People v Felder,* 47 NY2d 287, 291 [1979] [holding that "(w)here a defendant in a criminal proceeding has unwittingly been represented by a layman masquerading as an attorney but in fact not licensed to practice law, his conviction must be set aside without regard to whether he was individually prejudiced by such representation"].) We detect no prejudice to defendants in the proceedings herein; moreover, any prejudice stemming from Penofsky's lack of admission would impact upon the People, rather than defendants. *(Cf., People v Felder, supra; compare, People v Charles F.,* 60 NY2d 474, 477 [1983], *cert denied* 467 US 1216

[1984] [holding that while a defendant is constitutionally entitled to receive a fundamentally fair trial, "the mere allegation that a Judge lacks legal training does not mandate removal"].)

This court in no way wishes to minimize the egregious nature of Penofsky's conduct. We are shocked and dismayed that an individual acting under the auspices of the District Attorney's office, prosecuting alleged criminals, should, himself, have violated the public trust invested in him by essentially perpetrating a fraud on the very People he was hired to protect and serve. However, we cannot in this case say that his actual conduct, either at the Grand Jury or at trial, prejudiced the defendants. While in a closer case, we might have been inclined to reverse, any error here was harmless, in light of the overwhelming proof of guilt. These defendants sold 3.6 pounds of cocaine to undercover police officers in an elaborately constructed series of events. The testimony of the confidential informant and police witnesses left no room for doubt in this case.

■ Defendants' contention that the prosecutor systematically excluded minorities, particularly Hispanics and blacks, from the jury in violation of *Batson v Kentucky* (476 US 79 [1986]), appears to be unfounded. We first observe that the record reflects that two of the jurors were Spanish-speaking. In addition, one juror was Filippino. Although the prosecutor excused, among others, one juror with a surname which may have been Spanish (Ms. Ascensio) and a Hispanic named Maria Romano, we are unpersuaded that the exercise of peremptory challenges against these 2 individuals, and approximately 3 other black and Hispanic* individuals, out of the 17 or 18 peremptory challenges exercised, makes out a prima facie showing of discrimination against Hispanics. *(Cf., People v Hockett*, 128 AD2d 393 [1st Dept 1987] [reversing where prosecutor used 12 of 17 peremptory challenges to strike potential black jurors].) We therefore conclude, as did the trial court, which viewed the jury selection, that this claim must fail.

■ Defendant Munoz also assigns as error the court's re-

---

* The exact number of challenges to black and Hispanic jurors exercised by the prosecutor cannot, with finality, be determined, because, as conceded at oral argument, the voir dire minutes are unclear, sometimes using the names of potential jurors, sometimes using the seat number. We believe that in the future, the better practice to be employed would be to refer to jurors by name and thus avoid an ambiguous record.

fusal to grant him an additional adjournment to secure the presence of a witness, Martha Cecelia, and its subsequent refusal, when she arrived in court, to interrupt summations to permit her to testify. We conclude, upon reviewing the circumstances in this case, that the trial court did not abuse its discretion, as a matter of law, in either regard. *(People v Singleton,* 41 NY2d 402, 405 [1977].)

Defendant Munoz requested a one-day adjournment on the last day of the People's case, so as to secure Cecelia's presence to testify. This request was granted. The following morning, when Cecelia failed to appear, the court granted an adjournment until 11:00 A.M.; *counsel* stated that this would be the final request. After waiting until 11:07 A.M., the court directed the defense attorneys to commence their closing statements. At 12:30 P.M., between summations of defense and prosecution, the court broke for lunch. While Munoz contends Cecelia arrived at the courthouse at 12:30 P.M., the court was apparently not notified of her presence until 2:00 P.M., when counsel requested the case be reopened so that her testimony could be heard. We do not find the court's refusal to do so to be an abuse of discretion. *(See, People v Washington,* 71 NY2d 916, 918 [1988]; *Matter of Anthony M.,* 63 NY2d 270, 283-284 [1984].)

Accordingly, the judgments of the Supreme Court, New York County (Frederic Berman, J.), rendered June 19, 1986, convicting defendant Munoz of criminal possession and criminal sale of a controlled substance in the first degree and convicting defendant Sanchez-Medina of criminal sale of a controlled substance in the first degree, and sentencing defendants, respectively, to indeterminate terms of 20 years' to life imprisonment and 18 years' to life imprisonment should be unanimously affirmed.

MURPHY P. J., SULLIVAN, MILONAS and SMITH, JJ., concur.

Judgments, Supreme Court, New York County, both rendered on June 19, 1986, unanimously affirmed. Motion by appellant Munoz seeking production of Grand Jury minutes, withdrawn per letter of September 22, 1989.