Titone, J.
(dissenting). It has been observed that a Grand Jury can indict anyone or anything — even a ham sandwich.[1] *108 Now, under the majority’s holding, apparently anyone can present the People’s case to the Grand Jury — even an unadmitted layperson masquerading as an attorney. Because this position makes a mockery of both the rules prohibiting legal practice by laypersons and the Grand Jury system itself, I dissent.
In People v Di Falco (44 NY2d 482, 488), after analyzing the history and import of CPL 190.25 (3) and 210.35 (5), this Court held that "where an unauthorized prosecutor conducts the [Grand Jury] proceedings, prejudice to the defendant may result and the indictment should be dismissed.” The majority has declined to apply that holding here because, in its view, despite his deception, Assistant District Attorney Daniel Penofsky was not an "unauthorized” person. This conclusion is, in turn, based on the observation that "neither the Constitution nor any statute requires that a District Attorney or an Assistant District Attorney be an admitted lawyer” and on the further premise that the requirement of "authority” is satisfied whenever an individual purporting to fulfill the prosecutor’s role has been appointed by a prosecutorial authority with subject matter jurisdiction over the controversy. The clear import of this analysis is that the District Attorney or Special Prosecutor in whose jurisdiction the prosecution falls may appoint anyone, regardless of his or her background and training, to conduct the Grand Jury proceedings. Although the majority disclaims that position (majority opn, at 105), its holding can be interpreted in no other way. For the following reasons, the Court’s holding cannot be sustained.
Initially, the majority’s startling suggestion that one need not be an attorney to qualify for the office of District Attorney or Assistant District Attorney is untenable. Until now, one would have thought that there was no need for an explicit provision in the Constitution or County Law §§702 and 930 requiring that the District Attorney and his appointed assistants be admitted attorneys (see, majority opn, at 105). The very term "district attorney” denotes an individual with the training and other required qualifications of an admitted attorney. More importantly, sections 478 and 484 of the Judiciary Law forbid unadmitted individuals from practicing law or appearing in any judicial proceeding (except in behalf of themselves). In fact, Judiciary Law § 485 makes it a crime to practice law without a license in this State. Since the activities performed by the People’s representative in the Grand Jury room — e.g., eliciting testimony from witnesses and giving legal instruc *109 tions — unquestionably constitute the practice of law, it seems obvious and beyond any question that the role cannot be filled by a layperson. Any other view would lead to the absurd conclusion that those charged with the duty of enforcing the criminal laws may, in the process, break them.
If there remains any doubt on the subject, it should be dispelled by the special exemptions in Judiciary Law §§478 and 484 for law students or recent law graduates who are "acting under the supervision of the state or a subdivision thereof or of any officer or agency of the state or a subdivision thereof, pursuant to a program approved by the appellate division.”[2] By these provisions, the Legislature has indicated that if a District Attorney wishes to appoint unadmitted individuals to act as Assistants, the appointments must be confined to a narrow class of laypersons with the statutorily defined qualifications. The precision with which the Legislature has expressed its wishes in Judiciary Law §§ 478 and 484 precludes any conclusion that a "regularly assigned” Assistant District Attorney may be someone other than a licensed attorney or a person likely to become licensed at the earliest possible point.
Even if the majority did not rest its holding on the untenable proposition that Assistant District Attorneys need not be admitted lawyers, its ultimate conclusion in this case would be difficult to sustain. First, in this case the appointing authority, the Special Narcotics Prosecutor, was not even aware of Penofsky’s status as an unadmitted layperson. Thus, contrary to the majority’s assertion (majority opn, at 105), it cannot fairly be said that this imposter was acting with the "permission” of the Special Narcotics Prosecutor.[3]
Second, there is no support in law or logic for the majority’s suggestion that only a lack of subject matter jurisdiction will suffice to vitiate the prosecutor’s authority under CPL 190.25 *110 to appear before the Grand Jury. We held in People v Di Falco (44 NY2d 482, 487, supra) that "the sound theory and policy of our criminal procedure [requires] that only the regularly constituted officials upon whom the law devolves the power, may officiate in aid of the Grand Jury” (id. [emphasis supplied]). While this analysis has been applied in the past only in cases involving a flaw in the presenting prosecutor’s subject matter jurisdiction (People v Di Falco, supra; cf., People v Beauvais, 98 AD2d 897 [rejecting District Attorney’s attempt to appoint a prosecutor without jurisdiction pro hac vice]), there is no reason to confine the Di Falco analysis to those situations.
Certainly, People v Dunbar (53 NY2d 868), on which the majority heavily relies, did not suggest that Di Falco was intended to be read so narrowly. The Dunbar Court merely stated that the "effects of a failure to comply with the waiver of nonresidence requirement,” whatever they might be, did not include the invalidation of an otherwise duly appointed Assistant’s authority to act as the People’s representative (id., at 871). The minor procedural defect in the Dunbar Assistant’s appointment, however, cannot seriously be compared to the fundamental disqualifying circumstance in this Assistant’s case — i.e., his inability to engage in the practice of law without simultaneously violating it. And, contrary to the majority’s repeated assertions, this fundamental defect cannot be cured through the simple expedient of characterizing A.D.A. Penofsky as having "duly executed the oath of office,” having been "regularly assigned as an Assistant District Attorney” or having been "regularly appointed” to that office (majority opn, at 104, 106). Plainly, a person cannot be said to have "duly” executed the oath of office, or to be "regularly appointed” to an office, when his or her performance of the duties associated with the office constitutes a blatantly criminal act.
Further, as was made clear in Di Falco, the central importance of the prosecutor’s role in the Grand Jury process forecloses any argument that the presence of an unauthorized person in that capacity is a mere technical defect not rising to the level of an impairment of the integrity of the process. The Di Falco Court’s observations on this point bear repetition (44 NY2d, at 486-487, supra): "During the actual [Grand Jury] proceedings, the legal adviser of the Grand Jury is the District Attorney [represented by an appointed Assistant] * * *. The District Attorney [through an appointed Assistant] determines the competency of witnesses to testify * * * and must instruct *111 the jury on the legal significance of the evidence * * *. He, in effect, determines what witnesses to present * * * and who should be excluded. These duties and powers * * * vest th[e District Attorney and the appointed Assistants] with substantial control over the Grand Jury proceedings, requiring the exercise of completely impartial judgment and discretion.”
These factors, which were deemed sufficient to justify the invalidation of an indictment obtained by a prosecutor lacking subject matter jurisdiction (People v Di Falco, supra), furnish an even stronger case for the invalidation of an indictment obtained by a person who has never passed the Bar examination or been admitted to practice law in this State. Because of these serious defects in A.D.A. Penofsky’s credentials, there can be no assurance that he exercised the considerable discretion that the law confers upon the District Attorney in a manner consistent with the controlling legal principles, the ethical precepts that constrain licensed attorneys and the sound judgment that licensed attorneys are presumed to possess (see generally, Jemzura v McCue, 45 AD2d 797 [recognizing dangers posed by legal practitioners not trained, examined and licensed for the work]; see also, People v Jones, 70 NY2d 547 [conviction obtained by A.D.A. Penofsky reversed for failure to disclose Rosario material]).[4]
Finally, even if the foregoing considerations were not sufficient to "impair the integrity of the proceeding” and to "create the possibility of prejudice” (CPL 210.35 [5]; People v Di Falco, 44 NY2d, at 488, supra), those conclusions would necessarily follow from the serious threat to the secrecy requirement that flows from the presence of this unadmitted imposter. As was noted in Di Falco (supra, at 488), "[s]ecrecy is a vital requisite of Grand Jury proceedings” (accord, People v Minet, 296 NY 315, 323). Indeed, it has been observed that the "blessings [that] accrue from the grand jury [exist] because *112 its proceedings are secret” (People v Minet, supra, at 323). We concluded in Di Falco (supra, at 488) that the presence of a duly admitted prosecutor lacking subject matter jurisdiction so "infringe[d] upon the secrecy requirement” that the integrity of the proceeding was irreparably tainted, providing an additional reason for the indictment’s dismissal (see also, People v Minet, supra, at 323-324). The risk of disclosure is obviously no less formidable when a charlatan such as Penofsky, who is not an "officer of the court” and is not accountable to any disciplinary authority, has been permitted in the Grand Jury room.
In the final analysis, I cannot concur in a rule that would permit the State to prosecute on the basis of an indictment obtained by a layperson because, in my view, such a rule compromises the integrity of the process and thereby undermines the public’s ability to invest its confidence in that process. In theory, the Grand Jury is the bulwark in our legal system against oppressive and abusive conduct by the prosecutorial arm of government (see, People v Calbud, Inc., 49 NY2d 389, 395-396; People v Iannone, 45 NY2d 589, 594). In modern practice, however, it has come to be regarded, all too often, as a mere "investigative agent for the prosecutor.” (Matter of Additional Jan. 1979 Grand Jury v Doe, 50 NY2d 14, 23 [Wachtler, J., concurring].) As one court has observed, the Grand Jury frequently "operat[es] * * * as a rubber stamp * * * generally affirming] what the prosecutor calls upon it to affirm * * * [and] indict[ing] or fail[ing] to indict as the prosecutor ’submits’ that it should.” (People v Colebut, 86 Misc 2d 729, 734.) Given the central importance of the prosecutor’s role in the Grand Jury system, I do not believe that we can, or should, accept as a proper predicate for a criminal prosecution the work product of a Grand Jury whose "legal adviser” was a person such as Daniel Penofsky — who was never certified as competent by the State Board of Law Examiners, was never approved by the Committee on Character and Fitness and who himself had such little personal regard for the law that he was willing to perpetuate a 16-year fraud on both his employers and the public.
We demean the process as a whole when we hold, in essence, that the Grand Jury proceeding was not fatally tainted by either Penofsky’s lack of admission to the Bar or his criminally fraudulent conduct. Accordingly, I would hold that the indictment under which defendant was prosecuted was defective and should have been dismissed.
*113 Chief Judge Wachtler and Judges Simons, Kaye and Bellacosa concur with Judge Hancock, Jr.; Judge Titone dissents and votes to reverse in a separate opinion in which Judge Alexander concurs.
In each case: Order affirmed.

. Wolfe, The Bonfire of the Vanities, at 603, quoting Wachtler, Ch. J.

. Specifically, the exemption applies to (1) "law students who have completed at least two semesters of law school” and (2) recent graduates of approved law schools who have taken the next Bar examination "immediately available” after they graduated or were notified of their failure on a prior examination and have not yet been notified on their failure to pass two Bar examinations (Judiciary Law §§ 478, 484).

. Indeed, the majority’s statement that Penofsky’s unlicensed status did not "affect his permission” to represent the People before the Grand Jury is undermined by the fact that the Special Narcotics Prosecutor fired him immediately after his fraud was revealed (see, People v Munoz, 153 AD2d 281, 283).

. The potential for mischief in these cases is not vitiated by the fact that Penofsky was acting under the aegis of the Special Narcotics Prosecutor’s office, with its internal hierarchy of supervision by admitted attorneys. No matter how conscientious that office’s supervisory staff may be, it cannot involve itself in the minutiae of the day-to-day decisions that must be made in connection with each prosecution. Similarly the availability of judicial review through a motion to inspect and dismiss is not a sufficient means of ensuring the regularity of the underlying process, since many of the activities of the Assistant District Attorney handling the Grand Jury presentation, including witness preparation and selection of the counts to be submitted, take place off the record and, consequently, routinely evade judicial scrutiny (see also, People v Minet, 296 NY 315, 322).