964 F.2d 1295
 Zoilo LINARES and David Munoz, Petitioners-Appellants,
v.
Daniel SENKOWSKI, Superintendent of the Clinton Correctional
Facility, and John P. Keane, Superintendent of the
Sing Sing Correctional Facility,
Respondents-Appellees.
 Nos. 1320, 1321, Docket 91-2605, 92-2001.
 United States Court of Appeals,
Second Circuit.
 Argued April 8, 1992.
Decided May 26, 1992.
 
 John J. Kenney, New York City (Simpson Thacher & Bartlett, Andrew S. Amer, Steven R. Chabinsky, of counsel), for petitioners-appellants.
 Paul Shechtman, New York City, Asst. Dist. Atty., (Robert M. Morgenthau, Dist. Atty., Mark Dwyer, Asst. Dist. Atty., of counsel), for respondents-appellees.
 Before: FEINBERG, WINTER and ALTIMARI, Circuit Judges.
 FEINBERG, Circuit Judge:
 
 
 1
 Appellants, two of six individuals charged in connection with the criminal sale and possession of a controlled substance, appeal from orders of the United States District Court for the Southern District of New York, Louis J. Freeh, J., dated November 4, 1991, denying their petitions for writs of habeas corpus. Appellants claim that their convictions violated the Due Process Clause of the Fourteenth Amendment because the prosecutor fraudulently represented himself as an admitted attorney when he was in fact never admitted to the bar. For the reasons given below, we affirm.
 
 Background
 
 2
 This appeal arises from the November 1985 indictment of appellants Zoilo Linares and David Munoz and their co-defendants, Elmer Sanchez-Medina, Edimer Rosero, Livia Del-Rosario and Irma Posada, for the criminal sale and possession of cocaine. Munoz v. Keane, 777 F.Supp. 282, 283 (S.D.N.Y.1991). Two of the original defendants pled guilty, and the remaining four, including appellants, were tried in May 1986. Id. at 283. At trial, the evidence that Linares and Munoz sold and possessed 3.6 pounds of cocaine was overwhelming, and they were convicted in June 1986. Linares was sentenced to concurrent prison terms of 17 years to life, and Munoz was sentenced to concurrent prison terms of 20 years to life. Id.
 
 
 3
 Daniel J. Penofsky, a former assistant district attorney in the Special Narcotics Prosecutor's Office, had presented the case against appellants to the grand jury, handled pre-trial discovery and tried the case. In March 1989, an investigation conducted by the District Attorney's office revealed that Penofsky was not admitted to practice law in New York, that he had either never sat for or never passed the New York State bar examination, and that he had never submitted documentation to the Character Committee of any New York Judicial Department in an effort to be admitted upon waiver of the bar examination due to reciprocity with another state. See People v. Munoz, 153 A.D.2d 281, 550 N.Y.S.2d 691, 692 (1st Dep't 1990), appeal denied, 75 N.Y.2d 922, 555 N.Y.S.2d 41, 554 N.E.2d 78 (1990). After Penofsky's fraud came to light, he was dismissed as an assistant district attorney, People v. Munoz, 550 N.Y.S.2d at 692, and in January 1991, following a plea of guilty, he was convicted of one count of defrauding the government and of one count of practicing law without a license.
 
 
 4
 Upon learning of Penofsky's fraud, appellants sought to have their convictions reversed. While appellants' case was pending in the state courts, the New York Court of Appeals had occasion to consider the same issue as that raised by appellants, see People v. Carter, 77 N.Y.2d 95, 564 N.Y.S.2d 992 (1990), cert. denied, --- U.S. ----, 111 S.Ct. 1599, 113 L.Ed.2d 662 (1991), and appellants were given the opportunity to renew their applications for leave to appeal their convictions pending the outcome of that case. Munoz v. Keane, 777 F.Supp. at 284 n. 5. The New York Court of Appeals rejected the defendants' claim in Carter that their prosecution by an unlicensed attorney (also Penofsky) denied them Due Process under the Federal and State Constitutions.
 
 
 5
 After exhausting their state-court remedies, appellants petitioned the district court for writs of habeas corpus. Their petitions were denied on the merits, Munoz v. Keane, 777 F.Supp. at 289, and this appeal followed.
 
 Discussion
 
 6
 Appellants argue that criminal defendants have a constitutional right to be prosecuted by attorneys who do not falsely hold themselves out to be admitted attorneys. Appellants contend that trials in which prosecutors pretend to be what they are not violate the Due Process Clause by denying defendants "[a] fair trial in a fair tribunal." In re Murchison, 349 U.S. 133, 136, 75 S.Ct. 623, 625, 99 L.Ed. 942 (1955). Although appellants cannot point to any particular act of the prosecutor during the proceedings that prejudiced them, they assert that where a prosecutor, a "quasi-judicial officer," has falsely represented that he is an attorney, as Penofsky has, the defendants need not demonstrate prejudice to have their convictions vacated.[1]
 
 
 7
 Because this case does not come to us on direct appeal from a federal conviction but on an appeal from the denial of habeas corpus to state prisoners, we are required to consider whether the argument pressed by appellants, if accepted, would establish a new constitutional rule of criminal procedure. Teague v. Lane, 489 U.S. 288, 299, 109 S.Ct. 1060, 1069, 103 L.Ed.2d 334 (1989). If such a holding would create a new rule, then we may not reach the merits of appellants' argument because new rules may not be applied or announced in a habeas corpus proceeding.[2] Id. at 310, 109 S.Ct. at 1075; Sawyer v. Smith, 497 U.S. 227, 110 S.Ct. 2822, 2831, 111 L.Ed.2d 193 (1990).
 
 New Rules
 
 8
 The standard for determining whether the right asserted by appellants is a "new rule" under Teague involves an assessment of whether or not the rule is "dictated by precedent existing at the time the defendant's conviction became final." 489 U.S. at 301, 109 S.Ct. at 1070. In examining the precedents, we have reviewed a rule related to that proposed by appellants. The rule holds that a prosecutor who knowingly allows a government witness to commit perjury deprives the defendant of Due Process. See Giglio v. United States, 405 U.S. 150, 153, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972); Napue v. Illinois, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959). We have concluded, however, that a reasonable interpretation of this rule might limit it to situations in which a prosecutor has allowed perjury to be presented to the trier of fact determining the guilt or innocence of the defendant. Where, as in our case, the only perjury committed was the prosecutor's signing of documents as an admitted attorney, documents that the trier of fact--the jury--did not see, a state court could reasonably distinguish Giglio and Napue and find no rule requiring reversal of appellants' convictions.
 
 
 9
 We simply cannot find that the federal constitutional right asserted is dictated by precedent. Indeed, appellants do not cite even one federal case that closely resembles ours.[3] Of course, as appellants correctly point out, every defendant has the right to a fair trial. Obviously, this right does not constitute a new rule. But, if a habeas corpus petitioner can describe the right sought at so high a level of generality, it is difficult to see how anything could be termed a new rule. This result is clearly inconsistent with Teague and its progeny. If we instead, and more reasonably, describe what appellants seek as a rule holding unconstitutional those proceedings in which a prosecutor fraudulently represents that he or she is licensed to practice law, such a rule is not required by any prior decision. We conclude therefore that the rule appellants ask us to announce would constitute a "new rule" under Teague.
 
 New Rules That Apply On Habeas Corpus
 
 10
 That appellants ask this court to announce a new rule in a habeas corpus proceeding does not itself resolve our inquiry. The Supreme Court has articulated two "narrow exceptions" to Teague, Saffle v. Parks, 494 U.S. 484, 486, 110 S.Ct. 1257, 108 L.Ed.2d 415 (1990), describing circumstances under which a new rule may be applied on collateral review: "The first of these applies to new rules that place an entire category of primary conduct beyond the reach of the criminal law..., or new rules that prohibit imposition of a certain type of punishment for a class of defendants because of their status or offense.... The second ... applies to new 'watershed rules of criminal procedure' that are necessary to the fundamental fairness of the criminal proceeding." Sawyer v. Smith, 110 S.Ct. at 2831 (citations omitted). Because the first exception has no application here, we turn to appellants' argument that the rule they advocate in this case is a "watershed" rule of criminal procedure.
 
 
 11
 In considering this issue, it should first be noted that there is a long-standing tradition of lay prosecutions for misdemeanor offenses in New York. See, e.g., People v. Van Sickle, 13 N.Y.2d 61, 63, 242 N.Y.S.2d 34, 192 N.E.2d 9 (1963) (Van Voorhis, J., concurring) (noting that "petty crimes or offenses of this nature may be prosecuted by administrative officers"); People v. Black, 156 Misc. 516, 519, 282 N.Y.S. 197 (Co.Ct. Oswego Co. 1935); cf. N.Y. Judiciary Law § 484(2) (McKinney Supp.1992).
 
 
 12
 Appellants claim that the entire criminal process was infected by the fact that Penofsky was engaged in a fraud. They argue that "a valid prosecution may not be based on a fraud perpetrated on the court and the People from its inception." We must examine appellants' claims in light of what the Supreme Court has stated regarding the second exception to the Teague doctrine: "Because we operate from the premise that such procedures [new rules not barred by Teague ] would be so central to an accurate determination of innocence or guilt, we believe it unlikely that many such components of basic due process have yet to emerge." Teague, 489 U.S. at 313, 109 S.Ct. at 1077. Further guidance with respect to determining which new rules apply in a habeas corpus proceeding emerges from a consideration of the new rules that the Supreme Court has itself refused to designate under this exception. In Teague, for example, the Supreme Court refused to apply Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), in reviewing a petition for habeas corpus challenging convictions that became final prior to Batson. See Teague v. Lane, 489 U.S. at 315, 109 S.Ct. at 1077-78. The Court in Batson found a violation of Equal Protection where a prosecutor used peremptory challenges to exclude members of the defendant's race from the petit jury, and the Court there articulated the standard for assessing such a violation. In Sawyer v. Smith, 110 S.Ct. at 2832-33, the Supreme Court held that Caldwell v. Mississippi, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), could not be applied in a habeas corpus proceeding in which the underlying conviction became final before the Court decided Caldwell. The Court in Caldwell announced that it was constitutionally impermissible under the Eighth Amendment to rest a death sentence on a determination by a jury that had been led by the prosecutor to believe that it did not bear ultimate responsibility for determining the propriety of the defendant's death sentence. 472 U.S. at 328-29, 105 S.Ct. at 2639.
 
 
 13
 Both the Batson and Caldwell rules implicate the accuracy of a jury's determinations at least to the same extent as does the honesty of a prosecutor: Both the exclusion of members of a defendant's race from a petit jury and the diminishing of a jury's sense of responsibility for imposing the death sentence raise the possibility that the outcome of a case reflects something other than a thorough and proper assessment of the evidence. The Supreme Court, however, did not see fit to consider either new rule a Teague exception. Neither rule qualified as a bedrock or watershed principle. While we express no view on whether we would adopt the rule suggested by appellants if it were presented to us on direct appeal from a federal conviction, we cannot say that the rule is so fundamental to Due Process that it satisfies the narrow Teague exception for " 'watershed rules of criminal procedure' " that " 'alter our understanding of the bedrock procedural elements ' essential to the fairness of a proceeding." Sawyer v. Smith, 110 S.Ct. at 2831 (citations omitted).
 
 
 14
 Because appellants seek the benefits of a new rule that does not come within either of the Teague exceptions, their claims for habeas corpus relief are without merit.
 
 
 15
 The judgment of the district court is therefore affirmed.
 
 
 
 [1]
 Appellants do present specific instances of alleged misconduct on the part of the prosecutor during their trial. But appellants do not allege specifically how this misconduct prejudiced the outcome of the case. Appellants claim that if they must demonstrate prejudice, then they are entitled to discovery. However, since appellants only speculate that the outcome was prejudiced and present only general allegations in support of this speculation, they are not entitled to a remand for discovery. Harris v. Nelson, 394 U.S. 286, 300, 89 S.Ct. 1082, 1091, 22 L.Ed.2d 281 (1969)
 
 
 [2]
 There are two exceptions to this doctrine, under which a new rule may be applied in a habeas corpus proceeding, see infra
 
 
 [3]
 Appellants do cite People v. Munson, 319 Ill. 596, 150 N.E. 280 (1925), which vacated a conviction obtained by an unlicensed prosecutor. This decision, however, was based on state rather than federal law