STATE of Minnesota, Respondent,

v.

Lester Lee SMITH, Petitioner,
Appellant.

No. CX–90–539.

Supreme Court of Minnesota.

Oct. 18, 1991.

John M. Stuart, State Public Defender,
Marie L. Wolf, Asst. State Public Defender,
Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St.
Paul, and Michael O. Freeman, Hennepin

County Atty., Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

SIMONETT, Justice.

Defendant-appellant appeals from a conviction for possession of crack cocaine,[1] claiming his arrest was invalid, that he was denied the effective assistance of counsel, and that the trial was flawed by prosecutorial misconduct. We affirm.

The afternoon of May 7, 1989, Sgt. Jeffrey Grates set up surveillance of an apartment building on Portland Avenue in Minneapolis, known for its high drug traffic. From a half-block away, Grates observed defendant-appellant Lester Lee Smith standing in the entrance hallway. During a half-hour period, Grates watched as about five cars drove up to the building. Each time the defendant would leave the building, talk to the car's occupant, and then put his hand into the car as if an exchange was taking place. Each incident lasted 1 minute or less. In addition to the drive-up traffic, Sgt. Grates saw several persons walk up to the entryway, stay a short time, and then leave.

Believing he had probable cause to arrest defendant for the misdemeanor offense of loitering with intent to distribute drugs,[2] Sgt. Grates obtained a back-up of four officers. Grates, with Officer Rathbun, entered through the unlocked front door while the other three officers covered the rear entrance. Grates saw two men, one of them defendant Smith, standing in the entryway. Grates told the two men to "freeze, they were under arrest" but defendant Smith, with Grates in pursuit, ran up four or five flights of stairs to an apartment on the fifth floor, then down a hallway in the apartment to a back bedroom. As they ran down the apartment hallway, Grates testified, "I observed what looked like pieces of paper coming out down onto the floor from his hand."

Sgt. Grates subdued defendant in the back bedroom with the help of Officer Rathbun. There were five or six other people in the fifth floor apartment; three ran out and were caught by the other officers. Grates then picked up the pieces of paper in the hallway. They were bindles of crack cocaine. At that point Grates says defendant "went from a misdemeanor to a felony." The sergeant told Smith he was under arrest for possession and (although Smith disputed this) gave a *Miranda* warning. Grates testified defendant then told him he ran because he was on parole for armed robbery in Missouri, and that he offered to turn in a drug dealer. Drug paraphernalia was found in the apartment.

Defendant Smith retained attorney Clark Isaacs to defend him. At first Isaacs waived a *Rasmussen* hearing, but then, becoming aware of his client's statements to Sgt. Grates, he requested a hearing. At the *Rasmussen* hearing, only Sgt. Grates and one of the officers who had come up the back entrance testified. Neither Officer Rathbun nor defendant testified. The trial judge found probable cause for the officers to enter the building and ruled the statements were admissible.

Unknown to the trial court and defendant Smith, attorney Isaacs was having disciplinary problems. On July 31, 1989, the referee in the disciplinary proceedings recommended that Isaacs be disbarred, and, pending disposition of his recommendation, that Isaacs immediately be suspended from the practice of law. Isaacs requested the Minnesota Supreme Court to stay any interim suspension. Smith's trial began on August 14, 1989, with preliminary motions, followed by the *Rasmussen* hearing on August 15. The trial itself began on August 16 with the case submitted to the jury on the morning of August 18. At noon on the 18th, after the jury had begun its deliberations, attorney Isaacs learned (from his own attorney who had received the order in the mail) that this court 2 days earlier, on August 16, had ordered his immediate interim suspension.

1. Minn.Stat. § 152.09, subd. 1(2) (1988).

2. Minneapolis City Ordinance 385.50 (1988).

Isaacs promptly advised the trial judge, and new defense counsel was appointed. The jury returned a guilty verdict that afternoon. Some months thereafter, this court ordered Isaacs' disbarment.

The main issue in this case is defendant's claim of ineffective assistance of counsel, particularly in light of counsel's suspension. Agreeing with the trial judge, the court of appeals ruled (2–1 decision) that attorney Isaacs' representation had not been constitutionally ineffective and also rejected defendant's claims of lack of probable cause to arrest and prosecutorial misconduct. *State v. Smith,* 464 N.W.2d 730 (Minn.App.1991). We now take up these issues, adding more facts as we go along.

### I.

■ Defendant-appellant's claim of ineffective assistance of counsel breaks down into two parts. First of all, he claims that representation by a suspended attorney is a per se violation of one's Sixth Amendment right to counsel. Alternatively, if there is no per se violation, defendant asserts that various alleged deficiencies in the attorney's performance, compounded by the attorney's suspension, constitute a Sixth Amendment violation.

We distinguish the case that we do not have here, namely, counsel who is an impostor. If counsel has never been a lawyer, never been admitted to the bar, persuasive authority holds that this creates a per se Sixth Amendment violation. In *Solina v. United States,* 709 F.2d 160 (2d Cir. 1983), Walter Coleman acted as counsel for the defendant. Coleman had picked up some legal experience as a labor arbitrator but had never been admitted to the bar.

While the evidence of defendant's guilt was overwhelming and Coleman's performance was found to be reasonably competent, the Second Circuit reversed defendant's conviction, ruling there was an outright violation of defendant's right to counsel. It is instructive to note the reasons for a per se rule for impostors. Conceivably, a nonlawyer might do a lawyerly enough job, but if the criminal justice system is to maintain its structural integrity, if it is to have the public's trust, then an accused must be represented by counsel who has received the training necessary for admission to the bar and who, as a lawyer admitted to the bar, is subject to the court's supervision. The importance of this requirement is underscored by decisions of this court refusing to permit a person who has not graduated from an ABA-accredited law school to take the bar examination. *See, e.g., Petition of Busch,* 313 N.W.2d 419 (Minn.1981).

The question before us now is whether the per se rule should be extended to situations where counsel has been admitted to the bar but, at the time of the court proceedings, has lost licensure because of suspension or disbarment. Here, it seems to us, the reasons for loss of licensure can be so varied in kind and degree that imposition of a per se rule is inappropriate. Where suspension is for technical reasons, such as failure to pay an annual registration fee, the courts have declined to find a Sixth Amendment violation.[3] Yet even where licensure is lost for substantive reasons, *i.e.,* reasons bearing on counsel's character or competence, the courts, with few exceptions, have refused to find a per se violation of the constitutional right-to-counsel.[4]

---

**3.** No right-to-counsel violation in the following instances: *Hill v. State,* 393 S.W.2d 901 (Tex. App.1965) (nonpayment of dues); *People v. Medler,* 177 Cal.App.3d 927, 223 Cal.Rptr. 401 (1986) (same); *Reese v. Peters,* 926 F.2d 668 (7th Cir.1991) (same); *Johnson v. State,* 225 Kan. 458, 590 P.2d 1082 (1979) (failure to pay registration fees); *Lopez–Torres v. United States,* 700 F.Supp. 631 (D.Puerto Rico 1988) (failure to submit notarial records), *aff'd,* 876 F.2d 4 (1st Cir.1989), *cert. denied,* 493 U.S. 979, 110 S.Ct. 508, 107 L.Ed.2d 510 (1989); *but cf. People v. Brigham,* 208 Ill.App.3d 982, 153 Ill.Dec. 777, 567 N.E.2d 735 (1991) (per se violation where

attorney suspended for failure to pay registration fees).

**4.** No right to counsel violation in following instances: *Commonwealth v. Vance,* 376 Pa.Super. 493, 546 A.2d 632 (1988) (license revoked after representation for lack of good character, misrepresentations, and for failure to disclose professional misconduct that had occurred in another state where attorney was also licensed), *appeal denied,* 521 Pa. 620, 557 A.2d 723 (1989); *United States v. Mouzin,* 785 F.2d 682, 694–98 (9th Cir.1986) (attorney disbarred during trial for unbecoming conduct, *e.g.,* failure to meet

Important competing considerations are involved. On the one hand, the integrity of the criminal justice system is at stake. It seems incongruous to entrust a person's liberty to counsel in whom the court has formally declared its lack of trust. On the other hand, there is a reluctance to set aside a criminal conviction where guilt has been fairly established by the evidence in proceedings conducted with reasonable competence by counsel. Whether there has been a Sixth Amendment violation requires, we think, a more flexible approach than a per se rule. We reject, therefore, defendant Smith's claim of a per se violation.

## II.

Even if Isaacs had been at all times a duly licensed practitioner, defendant argues that Isaacs' performance was ineffective. Defendant claims Isaacs incompetently prepared and tried the case. Defendant then bolsters this line of attack by arguing that Isaacs' loss of licensure partially caused these deficiencies. Finally, defendant argues counsel's failure to keep his client informed of his pending disciplinary proceeding created an attorney-client conflict of interest.

■ We review these claims under the test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and adopted by us in *Gates v. State,* 398 N.W.2d 558 (Minn. 1987). Under *Strickland–Gates,* to prove a violation of the Sixth Amendment right to counsel, the defendant must prove (1) that counsel's assistance was deficient, *i.e.,* that it failed to meet the standard of a reasonably competent criminal defense attorney; and (2) there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694, 104 S.Ct. at 2064, 2067, 398 N.W.2d at 561.

By reasonable probability is meant a probability "sufficient to undermine confidence in the outcome." *Id.*

■ There are no set rules or guidelines for applying the performance and prejudice components of *Strickland;* rather, the reviewing court must look to "all the circumstances." 466 U.S. at 690, 695, 104 S.Ct. at 2066, 2068.

In this case an unusual factor is added to the totality of circumstances, namely, counsel's mid-trial license suspension. In evaluating this factor's significance, it is important to consider whether the reasons for the loss of licensure are technical or substantive. Technical reasons are of little significance while substantive reasons require close examination. Next it must be considered whether the substantive reasons for loss of licensure are accompanied by other specific conduct which fails to meet the standard of reasonable competence. Relevant to this inquiry, too, is whether the conduct leading to the loss of licensure involved the client's case. If there are other professional deficiencies, it must be determined if these deficiencies have so combined, directly or indirectly, with the substantive reasons for loss of licensure as to prejudice the outcome of the proceedings. We can conceive, too, that there may be a rare case where the substantive reasons for loss of licensure are so egregious, so notoriously bad, that it might be said that these reasons alone render the court proceedings unfair and unreliable.

Two cases aptly illustrate the foregoing discussion. In an Illinois case, inexperienced counsel admitted his inability to conduct the defense of a complicated case involving a capital offense, and this, compounded by counsel's then pending disciplinary proceedings, was held to be a Sixth Amendment violation. *People v. Williams,* 93 Ill.2d 309, 325, 67 Ill.Dec. 97, 103–04, 444 N.E.2d 136, 142–43 (1982), *cert. denied,*

deadlines, failure to prosecute an appeal, and bouncing a check unrelated to the trial), *cert. denied sub nom. Carvajal v. United States,* 479 U.S. 985, 107 S.Ct. 574, 93 L.Ed.2d 577 (1986); *Waterhouse v. Rodriguez,* 848 F.2d 375, 383 (2d Cir.1988) (attorney disbarred on the second day of a hearing for accepting fees from clients without properly working on their case and for misappropriating client funds), *cert. denied,* 493 U.S. 1003, 110 S.Ct. 564, 107 L.Ed.2d 558 (1989). *But cf. People v. Hinkley,* 193 Cal.App.3d 383, 238 Cal.Rptr. 272 (1987) (adopting per se rule where attorney, at the time of trial, was suspended for reasons related to competency).

467 U.S. 1218, 104 S.Ct. 2666, 81 L.Ed.2d 371 (1984). *See also People v. Long*, 208 Ill.App.3d 627, 153 Ill.Dec. 556, 567 N.E.2d 514 (1990) (limiting *Williams* to its facts), *appeal denied*, 137 Ill.2d 669, 156 Ill.Dec. 566, 571 N.E.2d 153 (1991). In the second case, *United States v. Novak*, 903 F.2d 883 (2d Cir.1990), the attorney, Joel Steinberg, appears to have competently represented defendant in a drug case. After the client's conviction, Steinberg was charged and convicted of extreme child abuse in a highly publicized trial, and this led to the discovery that Steinberg had never successfully completed law school and had obtained his bar licensure by fraud. Steinberg was disbarred. The court reasoned that Steinberg's fraud was so egregious that he simply did not qualify as "counsel" as that term is used in the Sixth Amendment. In addition, the court thought there was a risk that Steinberg, if worried about discovery of his fraudulent licensure, might conduct a less than vigorous defense of his client.

Each case, to repeat, depends on the totality of its own circumstances. The cautionary admonitions of *Strickland* need to be kept in mind. "[T]he distorting effects of hindsight" must be filtered out. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. A trial must be seen as it was then, with all its uncertainties and ambiguities, not as it appears now, in the light of the solidified reality of the verdict. Consequently, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance * * *." *Id.*

### III.

■ We now turn to the facts of this case. The charge against defendant Smith was possession of crack cocaine. The undisputed facts were that the apartment building was a crack house, that Smith was in the building and meeting "visitors," and that Smith ran when the police sought to arrest him. Smith's defense hinged upon

showing that the crack bindles found on the floor of the apartment hallway had not been dropped by him. This involved Sgt. Grates' credibility. The record shows attorney Isaacs extensively cross-examined Sgt. Grates, as he should have, both at the *Rasmussen* hearing and at the trial.[5] In a post-trial affidavit, Smith claims he was at the apartment house waiting for his aunt, a resident, to return so he could borrow her car. Isaacs subpoenaed Smith's aunt to testify but then, understandably, chose not to call her because of her own drug problems and her attorney's advice to refuse to testify. As to other witnesses who allegedly should have been called, Smith fails to indicate who they were, what their testimony would have been, or that they could have been found. *Gates*, 398 N.W.2d at 563 (speculation that an investigation would have uncovered something is not enough). The decision not to have defendant testify was a matter of strategy. True, defendant's statement about being on parole for armed robbery was already in evidence, but Smith would still have had to explain, if he had taken the stand, why he had been meeting traffic out in front of the apartment building.

In two respects Isaacs' performance, we believe, was deficient. At the *Rasmussen* hearing Isaacs took a lackadaisical attitude towards keeping out Smith's statements to the police, and he neglected to submit a brief requested by the trial judge on the admissibility of those statements. Whether or not the statements were admissible (and the trial judge ruled they were), it is unlikely, we think, that their admission made a difference in the verdict. There is also merit, we think, to Smith's claim that attorney Isaacs' closing argument was "minimal and confused." There was no discussion of reasonable doubt, no explanation of how the jurors might entertain a reasonable doubt on the evidence adduced, and no mention by Isaacs of why he had rested without putting on a case or making

---

**5.** Notwithstanding attorney Isaacs' close questioning, Grates insisted that Smith had dropped the crack bindles. Grates maintained he had been concentrating on Smith's hands during the chase because "number one, if he came out with a weapon. Number two, if he discarded anything during the flight."

an opening statement. Even so, the trial judge did instruct the jurors on reasonable doubt and also explained no adverse inference was to be drawn from defendant's failure to testify. Again, we do not think there is a reasonable probability that the trial's outcome was prejudiced.

This brings us to counsel's mid-trial suspension.[6] A summary of Isaacs' disciplinary record is necessary. In 1987 this court imposed a *stayed* 5–year suspension on Isaacs for misappropriating client funds, commingling funds, failing to keep proper books and records, and failing promptly to disburse settlement proceeds. *In re Isaacs*, 406 N.W.2d 526 (Minn.1987). On March 29, 1989, the Director of the Lawyers Professional Responsibility Board charged Isaacs with new charges of misappropriation, failure to maintain trust account records, neglect of client matters, failure to return client documents promptly, and failure to communicate adequately with clients. On July 31, 1989, the referee recommended that Isaacs be disbarred and also that he be suspended pending final determination of the disciplinary proceedings. On August 16, 1989, this court denied Isaacs' request for a stay and ordered immediate interim suspension. Isaacs was disbarred on February 9, 1990, in *In re Isaacs*, 451 N.W.2d 209 (Minn.1990).

Isaacs' suspension and ultimate disbarment were for substantive reasons. To establish that this deficiency altered the outcome of the trial, defendant Smith makes two claims: First, he says the record shows a defense attorney preoccupied with his own problems and consequently unable to give full attention to representing his client; and, second, he claims that Isaacs' disciplinary problems created an attorney-client conflict of interest.

Nothing in the record shows that Isaacs' impending suspension created any distracting preoccupation. Speculation by the defendant is not enough. Isaacs' misconduct involved other clients and other matters. Isaacs was not aware of his mid-trial suspension until the trial was over, and he then promptly notified the court. Nor can we find any synergistic relationship between the conduct resulting in Isaacs' loss of licensure and Isaacs' deficiencies in rendering assistance to his client in closing argument and in opposing admissibility of defendant's statements to the police. Considering the totality of the circumstances, there was no Sixth Amendment violation.

■ Defendant-appellant also argues that Isaacs actively represented conflicting interests, which, under *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980), constitutes a Sixth Amendment violation. The trial court found no conflict of interest. Neither do we. In *Cuyler*, counsel represented not only the defendant whose case was tried first but also two codefendants awaiting trial. *Id.* at 337–38, 100 S.Ct. at 1712–13. There was a possibility that trial tactics harmful to the first client would be helpful to the other clients awaiting trial. In this case there is no dual representation of clients and no representation of conflicting client interests. We agree Isaacs should have informed the court and his client prior to trial of the referee's disciplinary recommendation; but his failure to so inform did not bear adversely on his conduct of the trial. Put another way, Isaacs' disciplinary problems cannot be said to have presented a conflict or incentive for him to conduct a less than vigorous defense for his client. *See United States v. Mouzin*, 785 F.2d 682, 698–99 (9th Cir.1986) (no indication that attorney's disbarment prejudiced his conduct of trial).

---

**6.** Defendant argues that Isaacs' suspension occurred prior to trial on July 31, 1989, when the referee recommended disbarment. Rule 16(e), Rules on Lawyers Professional Responsibility, provides: "Upon a referee disbarment recommendation, the lawyer's authority to practice law *shall be suspended* pending final determination of the disciplinary proceedings, unless the referee directs otherwise or the Court orders otherwise." (Emphasis added.) We do not read the phrase "shall be suspended" to be self-executing but to be in the future tense, referring to what is to be done by the court. *Accord United States v. Mouzin*, 785 F.2d 682, 695 (9th Cir. 1986).

While Isaacs' misconduct was serious, meriting disbarment, it was unrelated to Isaacs' representation of defendant and was not so egregious as to infect the trial and undermine its reliability. Thus, to sum up, considering the totality of the circumstances, we conclude that defendant was not denied effective assistance of counsel under the Sixth Amendment.

## IV.

■ Two issues remain. First of all, we agree with the trial judge and the court of appeals that Sgt. Grates had probable cause to arrest under the loitering ordinance. The officer observed defendant for half an hour; the location and defendant's conduct were consistent with crack dealing.

Defendant alleges three instances of prosecutorial misconduct. In his opening statement the prosecutor stressed Sgt. Grates' experience as a police officer. He should not have done so. *State v. DelCastillo*, 411 N.W.2d 602, 604–05 (Minn.App. 1987). Nevertheless the trial court found the remarks not so prejudicial as to deny defendant a fair trial. We agree. In closing argument, the prosecutor talked about the danger of a police officer's work and said the officers "deserve a great deal of credit." This bordered on the improper, but here again the trial court, who was there, found no prejudice and we agree.

■ During the trial, attorney Isaacs quite properly sought to exploit differences in the testimony of Sgt. Grates and Officer Rathbun. Rathbun, for example, did not see Smith drop the cocaine bindles. In his summation, the prosecutor argued that Grates, being a more experienced officer than Rathbun, was more likely to remember events. This was not improper. The prosecutor was not trying to add his personal endorsement to Grates' testimony but rather was commenting on the contrasting qualifications of two witnesses who both happened to be police officers. *State v. Ture*, 353 N.W.2d 502, 516 (Minn.1984).

Affirmed.