**STATE of Minnesota, Respondent,**

v.

**Abdulkani ALI, Appellant.**

**No. A07–0428.**

Court of Appeals of Minnesota.

July 8, 2008.

100

Lori Swanson, Attorney General, St. Paul, MN; and Mike Freeman, Hennepin County Attorney, Michael Richardson, Assistant County Attorney, Minneapolis, MN, for respondent.

Lawrence Hammerling, Chief Appellate Public Defender, Bridget Kearns Sabo, Assistant Public Defender, St. Paul, MN, for appellant.

Considered and decided by WILLIS, Presiding Judge; HALBROOKS, Judge; and JOHNSON, Judge.

## OPINION

WILLIS, Judge.

Appellant challenges his conviction of first-degree assault, arguing that he is entitled to a new trial because (1) the district court abused its discretion by denying his request for an instruction to the jury on a lesser-included offense, (2) the prosecutor committed prejudicial misconduct, and (3) he was prosecuted by an assistant county attorney whose license to practice law was on restricted status. We affirm.

## FACTS

In the early morning of January 7, 2007, appellant Abdulkani Ali got into an argument with a clerk at a Minneapolis convenience store and began using racial epithets in addressing her. The clerk told Ali to leave the store immediately, but Ali refused and continued yelling at her. At this point the clerk pushed a "panic button" to activate an alarm system to call the police.

Another clerk, who had overheard Ali yelling and swearing, also told Ali to leave. Ali told that clerk to "shut up" and threw a cup of either water or soda at him. The first clerk pushed the panic button again and announced that the police were on their way, at which point Ali turned and began to walk toward the door. A customer who had been watching the incident grabbed Ali from behind and held him in a "bear hug" in an attempt to restrain him until the police arrived. During a struggle between the two men, Ali bit off the tip of the customer's middle finger on his left hand. Seconds before the police arrived at the convenience store, Ali got into his car and drove away. The police pursued Ali, stopped him, and brought him back to the convenience store. The first clerk and the injured customer both identified Ali, and the police arrested him.

Ali was charged with first-degree assault, in violation of Minn.Stat. § 609.221, subd. 1 (2006). A jury found Ali guilty, and the district court sentenced him to 74 months' imprisonment. This appeal follows.

## ISSUES

I. Did the district court abuse its discretion by denying Ali's request for a jury instruction on the lesser-included offense of fifth-degree assault?

II. Did the prosecutor commit prejudicial misconduct?

III. Is Ali entitled to a new trial on the ground that he was prosecuted by an assistant county attorney whose license to practice law was on restricted status for failing to comply with continuing-legal-education requirements?

## ANALYSIS

### I. The district court did not abuse its discretion by denying Ali's request for a jury instruction on the lesser-included offense of fifth-degree assault.

At trial, the district court denied Ali's request for a jury instruction on the lesser-included offense of fifth-degree assault. This court reviews the denial of a request for a jury instruction on a lesser-included offense for an abuse of discretion. *State v. Dahlin*, 695 N.W.2d 588, 597 (Minn.2005).

When a defendant requests an instruction on a lesser-included offense, a district court must give the instruction if (1) the lesser offense is included in the charged offense and (2) the evidence provides a rational basis for acquitting the defendant of the charged offense while convicting him of the lesser offense. *See id.* at 594; *Cooper v. State*, 745 N.W.2d 188, 193 (Minn.2008). In making this determination, the district court must view the evidence in the light most favorable to the party requesting the instruction and must not weigh the evidence or make credibility determinations. *State v. Penkaty*, 708 N.W.2d 185, 205 (Minn.2006). And this court also views the evidence in the light most favorable to the party requesting the instruction when reviewing the district court's decision. *Dahlin*, 695 N.W.2d at 598. Even if a district court abused its discretion by failing to give a requested instruction, this court will reverse a verdict "only if the defendant is prejudiced" by the

district court's failure to give the instruction. *Id.* (quotation omitted).

■ Here, it is undisputed that fifth-degree assault is an included offense of first-degree assault. *See State v. Griffin,* 518 N.W.2d 1, 3 (Minn.1994); *see also* Minn.Stat. § 609.04, subd. 1 (2006) (providing that a lesser degree of the same crime is an included offense). The issue is, therefore, whether the evidence provided a rational basis for the jury to convict Ali of fifth-degree assault while acquitting him of first-degree assault. *See Dahlin,* 695 N.W.2d at 595.

The difference between the crimes at issue is that first-degree assault causes "great bodily harm" while fifth-degree assault involves only "bodily harm." *Compare* Minn.Stat. § 609.221, subd. 1 (2006) *with* Minn.Stat. § 609.224, subd. 1 (2006). Great bodily harm is "bodily injury which creates a high probability of death, or which causes serious permanent disfigurement, or which causes a permanent or protracted loss or impairment of the function of any bodily member or organ or other serious bodily harm." Minn.Stat. § 609.02, subd. 8 (2006). By contrast, bodily harm means "physical pain or injury, illness, or any impairment of physical condition." *Id.,* subd. 7 (2006).

Ali concedes that the evidence established that the victim suffered a permanent injury to his finger. But he argues that not all permanent injuries constitute great bodily harm. He concludes, therefore, that the district court was required to give an instruction on both first-degree assault and fifth-degree assault and let the jury decide whether the injury constituted great bodily harm or only bodily harm. But the evidence showed that Ali bit nearly one inch off the tip of the victim's finger. The treating physician referred to the injury as a "partial amputation" of the victim's finger starting just above the base of

the fingernail. We conclude that the loss of the tip of a finger is a "serious permanent disfigurement" or "permanent ... loss or impairment of the function of" a bodily member. *See* Minn.Stat. § 609.02, subd. 8. On this evidence, the district court properly concluded that there was no "rational basis to find [Ali] not guilty of ... first degree assault but guilty of ... fifth degree assault." As the district court aptly noted:

> Either [Ali] assaulted [the victim] and ... he has a ... successful self-defense claim ... that the state has to disprove, or he's guilty on the evidence that's presented. [The victim] lost part of his finger. That's permanent.
>
> Now, one can split hairs about whether losing somewhere between a half inch and three-quarters of an inch ... of your fingertip is a member or not, but I would rule that part of your finger is a member, just like I don't believe you'd have to bite the whole arm off at the shoulder in order to find that he's lost an arm.

When the district court asked Ali's counsel to point to evidence that would provide a rational basis for convicting Ali of fifth-degree assault while acquitting him of first-degree assault, Ali's counsel responded that under *Dahlin,* Ali need not identify such evidence to warrant an instruction on fifth-degree assault. Similarly, Ali claims on appeal that a defendant does not have to identify "any evidence at all ... to meet the rational basis requirement." But *Dahlin* expressly reaffirmed earlier decisions holding that a district court is not required to give an instruction on a lesser-included offense if "*no* evidence is adduced" to support giving such an instruction. 695 N.W.2d at 595 (citing *State v. Merrill,* 428 N.W.2d 361, 370 (Minn.1988); *State v. Koop,* 380 N.W.2d 493, 495 (Minn.1986); and *State v. Murphy,* 380 N.W.2d 766, 772

(Minn.1986)). The undisputed evidence established that Ali bit off the tip of the victim's finger. There is no evidence that would provide a rational basis for convicting Ali of fifth-degree assault while acquitting him of first-degree assault. The district court, therefore, did not abuse its discretion by denying Ali's request for an instruction on fifth-degree assault.

## II. The prosecutor did not commit misconduct.

Ali argues next that he is entitled to a new trial because the prosecutor committed prejudicial misconduct during closing argument by denigrating the defense, improperly inflaming the passions of the jury, and suggesting that Ali had an opportunity to tailor his testimony.

Ali objected at trial to only some of the prosecutor's statements that he challenges on appeal. We must, therefore, apply two standards of review. *See State v. Dobbins*, 725 N.W.2d 492, 506 (Minn. 2006). Prosecutorial misconduct that was not objected to is analyzed under the plain-error standard. *State v. Ramey*, 721 N.W.2d 294, 299, 302 (Minn.2006). Under that standard, if a defendant shows that the alleged misconduct was plain error, the burden shifts to the state to establish that the misconduct did not prejudice the defendant's substantial rights. *Id.* at 300. The state meets this burden if it can show that there is no reasonable likelihood that the misconduct had a significant effect on the jury's verdict. *Id.* at 302. By contrast, prosecutorial misconduct that was objected to at trial is reviewed under the harmless-error standard, and this court will reverse unless the misconduct was harmless beyond a reasonable doubt, that is, unless the verdict is surely unattributable to the misconduct. *State v. Mayhorn*, 720 N.W.2d 776, 785 (Minn.2006) (citing

*State v. Swanson*, 707 N.W.2d 645, 658 (Minn.2006)).

### A. The prosecutor did not denigrate the defense.

Ali claims that the prosecutor improperly denigrated his self-defense claim. Specifically, he points to portions of the prosecutor's argument in which she (1) emphasized inconsistencies between Ali's statements to the arresting officer on the night of the incident and his trial testimony; (2) told the jury to "ask yourself if the oath means anything to this man after what you've heard coming out of his mouth now"; (3) characterized Ali's testimony as "his new, better, improved memory after ten months"; and (4) labeled Ali's version of the events as being "ludicrous" and a "yarn." Because Ali did not object to any of these statements, we apply the plain-error standard.

A prosecutor may not denigrate or belittle a particular type of defense in the abstract. *State v. Griese*, 565 N.W.2d 419, 428 (Minn.1997). For example, a prosecutor may not argue that a particular defense is one that is raised when "nothing else will work." *State v. Williams*, 525 N.W.2d 538, 549 (Minn. 1994). Nor should a prosecutor suggest that an argument is "some sort of syndrome of standard arguments" that defendants raise in a particular type of case. *State v. Salitros*, 499 N.W.2d 815, 818 (Minn.1993). But a "prosecutor is free to specifically argue that there is no merit to a particular defense in view of the evidence or no merit to a particular argument." *Id.*

At trial, Ali claimed that he was acting in self-defense. The prosecutor's statements were directed specifically at Ali's self-defense claim and Ali's testimony. The prosecutor argued to the jury that Ali's self-defense claim was not believable in light of the testimony of other witnesses

and inconsistencies between Ali's statements to the arresting officer on the night of the incident and his trial testimony. The prosecutor did not, however, suggest that a claim of self-defense is used when nothing else will work; that such a claim is, categorically, without merit; or that it is always raised in an assault case. The prosecutor's statements do not constitute misconduct, and, thus, there was no error, much less plain error.

**B. The prosecutor's statements were not calculated to improperly inflame the passions of the jury.**

■ Ali argues next that the prosecutor committed misconduct by appealing to the passions of the jury. He points specifically to the prosecutor's statement that Ali "not only bit [ ] down on [the victim's] finger" but that he continued to "chomp and chomp and chomp ... through all those layers of hard, hard bone." Ali also claims that the prosecutor improperly inflamed the passions of the jury by stating that Ali is "not the quiet little man sitting here dressed up in a suit" and by calling Ali's actions in biting the victim's finger "barbaric." Again, Ali did not object to these statements, and we apply the plain-error standard.

■ A prosecutor's closing argument should be based on the evidence and should not be calculated to improperly inflame the passions of the jury. *State v. Clark*, 296 N.W.2d 359, 371 (Minn.1980). But a prosecutor is not required to make a colorless closing argument and "has the right to present to the jury all legitimate arguments on the evidence, to analyze and explain the evidence, and to present all proper inferences to be drawn therefrom." *State v. Williams*, 586 N.W.2d 123, 127 (Minn.1998) (quotation omitted).

We conclude that the prosecutor's statements here were not calculated to improp-

erly inflame the passions of the jury. They were confined to the evidence and the inferences to be drawn from that evidence. Although the prosecutor's statements "were at times expressed in colorful terms," they do not amount to misconduct. *See State v. Davis*, 735 N.W.2d 674, 683 (Minn.2007). Again, there was no plain error.

**C. The prosecutor did not improperly suggest that Ali had an opportunity to tailor his testimony.**

■ Ali also argues that the prosecutor committed misconduct when she said that (1) Ali "had months to think about [his case] and learn ... about the law ... on self-defense" and (2) his testimony "fits very nicely" into what has to be established for a self-defense claim. Ali claims that these statements were an improper attempt to suggest that he had an opportunity to tailor his testimony. Because Ali objected at trial, we apply the harmless-error standard.

■ It is misconduct for a prosecutor to suggest, in the absence of evidence of actual tailoring of testimony, that a defendant, by his presence at trial and ability to review the evidence, has had an opportunity to tailor his testimony. *See Mayhorn*, 720 N.W.2d at 790. The rule prohibiting a prosecutor from suggesting that a defendant tailored his testimony is based on the rationale that a prosecutor should not be allowed to imply that a defendant is "less believable simply as a result of [the defendant] exercising [his] right of confrontation." *Dobbins*, 725 N.W.2d at 507 (quoting *Swanson*, 707 N.W.2d at 657–58). In other words, it is improper for a prosecutor to argue that a defendant observed the full presentation of evidence and then "took the witness stand and concocted a story exonerating himself" because such an argument asks the jury to draw an

adverse inference from the fact that the defendant exercised his Sixth Amendment rights to be present during trial and to confront the witnesses against him. *State v. Buggs,* 581 N.W.2d 329, 341 (Minn.1998).

Here, the prosecutor's statements did not suggest that Ali had tailored his testimony after hearing the testimony of witnesses and reviewing the trial evidence. Rather, the prosecutor suggested that Ali's testimony was not believable because, in the months between his arrest and the trial, he had learned what the law requires to establish a claim of self-defense and had prepared his testimony to fit such a claim. This was an argument that Ali's testimony was tailored from a review of the law, not from hearing trial testimony. Accordingly, we conclude that the prosecutor was not attempting to use the fact that Ali exercised his Sixth Amendment rights to impeach his credibility, and, therefore, there was no misconduct.

**III. Ali is not entitled to a new trial on the ground that he was prosecuted by an assistant county attorney whose license to practice law was on restricted status for failing to comply with continuing-legal-education requirements.**

The assistant county attorney who was assigned to Ali's case was Gemma Graham. At the time of Ali's prosecution, Graham's license to practice law was on restricted status because she had failed to submit affidavits of her compliance with continuing-legal-education requirements, in violation of rules 5.5 and 8.4(d) of the Minnesota Rules of Professional Conduct. *See In re Graham,* 744 N.W.2d 19, 19 (Minn.2008). Ali argues that his conviction "must be reversed because his case was prosecuted by an attorney who was not licensed to practice [law] when she signed the complaint against him or when she

tried the case." *See* Rule 12(B), Rules of the Minnesota State Board of Continuing Legal Education (providing that an attorney on restricted status "may not engage in the practice of law or represent any person or entity in any legal matter or proceedings within the State of Minnesota other than himself or herself"). This precise issue is one of first impression in Minnesota.

But the Minnesota Supreme Court has addressed analogous circumstances. First, in *State v. Abbott,* the supreme court considered whether a defendant was denied due process entitling him to a new trial because the attorney who prosecuted him was "not properly appointed an assistant county attorney." 356 N.W.2d 677, 679 (Minn.1984). The *Abbott* court held that the defendant was not entitled to have his conviction vacated and a new trial granted because "even if the prosecutor's appointment was technically defective, the defect did not prejudice defendant or deprive him of a fair trial." *Id.*

And in *State v. Smith,* a defendant argued that his Sixth Amendment right to counsel had been violated by the fact that he was represented by a defense attorney who, during the course of the trial, was suspended from the practice of law pending disbarment. 476 N.W.2d 511, 512–13 (Minn.1991). The supreme court noted that when a person representing a defendant is "an impostor" who had "never been a lawyer" and had "never been admitted to the bar," "persuasive authority holds that this creates a per se Sixth Amendment violation." *Id.* at 513. The supreme court explained further, however, that when a person "has been admitted to the bar but, at the time of the court proceedings, has lost licensure because of suspension or disbarment," the "imposition of a per se rule is inappropriate" because "the reasons for loss of licensure can be so varied in kind

and degree," ranging from technical reasons to substantive ones. *Id.* The supreme court also concluded that a "more flexible approach than a per se rule" is warranted to balance the competing considerations of the "integrity of the criminal justice system" and the "reluctance to set aside a criminal conviction where guilt has been fairly established." *Id.* at 514.

■ As an initial matter, we disagree with Ali's contention that because Graham's license to practice law was on restricted status when she signed the complaint and tried the case, the district court did not have jurisdiction. Rule 2.02 of the Minnesota Rules of Criminal Procedure provides: "A complaint shall not be filed . . . without the written approval, endorsed on the complaint, of the prosecuting attorney authorized to prosecute the offense charged. . . ." Ali was prosecuted by the office of the Hennepin County Attorney, which was the appropriate prosecuting authority because the alleged offense occurred in Hennepin County. *Cf. State v. Persons,* 528 N.W.2d 278, 279 (Minn.App. 1995) (holding that a district court erred by refusing to dismiss a complaint when the prosecution was not initiated by the prosecuting authority for the jurisdiction in which the offense occurred). And Ali has not challenged the validity of Graham's appointment as an assistant Hennepin County attorney. *See* Minn.Stat. § 388.10 (2006) (authorizing county attorneys to appoint assistant county attorneys). The restricted status of Graham's license to practice law did not affect the authority of the office of the Hennepin County Attorney to prosecute Ali through a duly appointed assistant county attorney. The district court had jurisdiction over Ali's prosecution.

In support of his claim that his conviction must be reversed and a new trial ordered, Ali relies on *People v. Dunson,* 316 Ill.App.3d 760, 250 Ill.Dec. 77, 737 N.E.2d 699 (2000). In *Dunson,* a prosecutor was duly appointed as an assistant state's attorney, but he was not licensed to practice law in Illinois when he prosecuted the defendant. 250 Ill.Dec. 77, 737 N.E.2d at 700. The Illinois Court of Appeals concluded, as a matter of common law, that the defendant's conviction was void and that he did not have to demonstrate any prejudice resulting from the fact that he was prosecuted by an unlicensed attorney. *Id.* at 700–05. The *Dunson* court based its decision to adopt such a per se rule on a concern for protecting the public from imposters engaged in the unauthorized practice of law and on a "well-settled rule" in Illinois that when a person who is not licensed to practice law initiates a civil action on behalf of another in court, the action should be dismissed, and, if it proceeds to judgment, the judgment is null and void and will be reversed. *See id.* at 702–03.

Other courts facing this issue have taken a different approach. In *Munoz v. Keane,* a New York federal district court denied the habeas corpus petitions of two codefendants who were convicted in a trial prosecuted by an assistant district attorney, Daniel Penofsky, who had graduated from law school but had not taken the New York bar examination and had not been admitted to practice law in New York. 777 F.Supp. 282, 283–87 (S.D.N.Y.1991), *aff'd sub nom. Linares v. Senkowski,* 964 F.2d 1295 (2d Cir.1992). The federal district court explained that no constitutional right to be prosecuted by a licensed attorney had ever been recognized and the fact that a defendant was prosecuted by an attorney who had not been admitted to practice law did not necessarily undermine the fairness of the trial process. *Id.* at 285–87. The *Munoz* court concluded that "[w]here, as here, defense counsel and an impartial tri-

al judge are capable of monitoring the prosecutor's conduct in order to ensure that no constitutional violations occur, it would be inappropriate to conclude that a due process violation automatically results from the prosecutor's unlicensed status." *Id.* at 286. The federal court also noted the policy ramifications of adopting a per se rule:

> We also cannot ignore the practical implications of accepting petitioners' due-process claim—every defendant convicted by Penofsky during his fourteen-year tenure as a prosecutor would be entitled to a new trial. Petitioners have not demonstrated a sufficient basis for invalidating such a large number of cases and have not suggested any way to limit the scope of their proposed constitutional rule.

*Id.*

Questions regarding the effect of Penofsky's unlicensed status gave rise to at least two decisions in the state courts of New York as well. In *People v. Carter,* New York's highest court rejected the argument that Penofsky's status rendered the joint trial of two defendants and their resulting convictions defective. 77 N.Y.2d 95, 564 N.Y.S.2d 992, 566 N.E.2d 119, 121–23 (1990). The court explained that Penofsky's nonlawyer status did not deprive the district court of jurisdiction and did not negate the authority conferred on him by his appointment as an assistant district attorney. *Id.* at 123. The *Carter* court further stated that although " 'the egregious nature of Penofsky's conduct' ... cannot be minimized, ... the fact that Penofsky was not a lawyer did not result *in a deprivation of defendants' constitutional due process rights." Id.* at 124 (citation omitted).

Similarly, in *People v. Jackson,* the Appellate Division of the New York Supreme Court held that although it was improper for Penofsky to have prosecuted a defendant, there was no reversible error without a showing that the defendant was prejudiced by the fact that Penofsky was not a licensed attorney. 163 A.D.2d 489, 558 N.Y.S.2d 590, 590 (N.Y.App.Div.1990). In reversing the trial court, the *Jackson* court specifically rejected the application of a per se rule that a conviction obtained by a prosecutor who was not a licensed attorney must be vacated, even if no prejudice is shown. *See id., rev'g,* 548 N.Y.S.2d 987, 995 (N.Y.Sup.Ct.1989).

■ For several reasons, we reject Ali's request for the application of a per se rule. We find the reasoning of the New York state and federal courts to be persuasive, and we conclude that to be entitled to a new trial, Ali must show prejudice resulting from the fact that he was prosecuted by an attorney whose license to practice law was on restricted status. First, requiring a showing of prejudice is consistent with our supreme court's decision in *Abbott.* Although the issue here concerns a prosecutor whose license to practice law was on restricted status, rather than a defect in a prosecutor's appointment, as in *Abbott,* we conclude that there are substantial similarities between the two issues, and, therefore, requiring a showing of prejudice to warrant a reversal and a new trial is appropriate.

Second, as the supreme court did in *Smith,* we distinguish the circumstances here from a case involving an individual who has never been admitted to the bar, an "imposter." *See* 476 N.W.2d at 513. Here, Graham was not an imposter. She had been admitted to practice law in Minnesota, although her license was on restricted status.

Third, the same competing considerations that the supreme court identified in *Smith*—namely, the integrity of the crimi-

nal justice system and a reluctance to set aside a criminal conviction when guilt was fairly established—also exist here. *See id.* at 514. And as the supreme court concluded in *Smith,* balancing these considerations requires flexibility that the application of a per se rule cannot afford. *See id.*

Finally, like the New York federal court in *Munoz,* we cannot ignore the practical effect of a per se rule. *See* 777 F.Supp. at 286. If we were to apply the standard that Ali urges, every defendant who was prosecuted by Graham during the more than 20 years that her license was on restricted status would be entitled to a reversal of his conviction, regardless of whether the integrity of any defendant's trial was in any way impaired.

Ali argues that if this court concludes that a showing of prejudice is necessary to entitle him to a new trial, he in fact did suffer prejudice because, had Graham "fulfilled her CLE requirements, ... she would have been educated on the current state of the law on prosecutorial misconduct" and would have avoided committing the misconduct of which Ali complains. Ali's argument is not persuasive. As we have already determined, Graham did not commit misconduct in her closing argument. We conclude that Ali has failed to show prejudice resulting from the fact that Graham's license was on restricted status at the time of Ali's prosecution, and, therefore, he is not for that reason entitled to a new trial.

## DECISION

We conclude that (1) the district court did not abuse its discretion by refusing to instruct the jury on the lesser-included offense of fifth-degree assault, (2) the prosecutor did not commit misconduct, and (3) Ali is not entitled to a new trial because he has failed to show prejudice resulting from the fact that he was prosecuted by an attorney whose license to practice law was on restricted status. We affirm.

**Affirmed.**